# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 27. Motion for** | Transfer Amended petition for review to the district court.

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form27instructions.pdf*

**9th Cir. Case Number(s)** | 26-4162

**Case Name** |

**Lower Court or Agency Case Number** | 2:26-cv-01853-LK

What is your name? | Nasir v. China Unicom et a

1. **What** do you want the court to do?

Appellant respectfully requests that this Court transfer the amended complaint to the district court for consideration.

2. **Why** should the court do this? Be specific. Include all relevant facts and law that would persuade the court to grant your request. *(Attach additional pages as necessary. Your motion may not be longer than 20 pages.)*

The district court dismissed the original complaint for lack of subject matter jurisdiction due to the presence of foreign parties. That dismissal was without prejudice—the court expressly granted leave to refile. The dismissal did not reach the merits of Appellant's trafficking and forced labor claims under 18 U.S.C. § 1595 et seq. However, requiring Appellant to refile would force him to pay a new filing fee for the same claims, based on the same facts, after having already paid the fee once. Courts have consistently held that a

Your mailing address:

sajjadqut01@outlook.com

City | | State | | Zip Code |

Prisoner Inmate or A Number (if applicable) |

**Signature** | s/Sajjad Nasir | **Date** | 07/23/2026

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 27** | *New 12/01/2018*

Pro Se Civil Complaint

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAJJAD NASIR

        Plaintiff(s),

1. EQUINIX INC.
2. NATIONAL AUSTRALIA BANK
3. CHINA UNICOM

        Defendant(s).

CASE NO. _____

**CIVIL COMPLAINT**

Refilled ECF No. 3, Order of Dismissal, W.D. Wash., Case No. 26-cv-01853-LK (June 25, 2026).

Jury Trial ☒: Yes ☐ No

## I.      PRELIMINARY STATEMENT

Plaintiff Sajjad Nasir, by and through counsel, alleges as follows.

Defendants Equinix Inc., National Australia Bank, and China Unicom trafficked Plaintiff subject to United States jurisdiction, reconstructing identities and corporate shells to evade sanctioned jurisdiction.

*18 U.S.C. § 1595 CIVIL REMEDY - 1*

Pro Se Civil Complaint

Plaintiff refiles this action seeking a civil remedy pursuant to 18 U.S.C. § 1595 following the Order of Dismissal Without Prejudice in Case No. 2:26-cv-01853-LK, expressly preserving all rights, claims, and appellate issues.

Defendants operated within U.S. jurisdiction and under OFAC-sanctioned restrictions, subject to committee subpoena.

Between September 30, 2024, and June 30, 2025, Plaintiff was fraudulently recruited through sham employment advertisements and synthetic compliance profiles.

Plaintiff was compelled to relocate to Equinix's SY1 facility in Sydney, Australia, under false pretenses.

At that facility, Plaintiff was forced to perform uncompensated technical labor installing and configuring network hardware.

Defendants maintained coercive control through physical confinement, surveillance, and financial manipulation.

National Australia Bank executed unauthorized transactions and stripped Plaintiff of financial autonomy to fund his own transport and confinement.

Claims against NAB arise under 18 U.S.C. § 1595 and § 1596(b) and seek joinder pursuant to Rule 18.

NAB's conduct formed part of the trafficking venture and is joined for complete relief.

Equinix and China Unicom harbored and benefited from the venture within U.S. data centers and network footprint.

Plaintiff seeks compensatory, statutory, and punitive damages as authorized under 18 U.S.C. § 1595.

*18 U.S.C. § 1595 CIVIL REMEDY - 2*

Pro Se Civil Complaint

## II.    NATURE OF THE ACTION

This is a civil trafficking action brought under 18 U.S.C. § 1595 on behalf of the Plaintiff, who was subjected to and harmed by Defendants forced-labor and trafficking venture operating between September 30, 2024, and June 30, 2025. Plaintiff seeks to recover compensatory and statutory damages caused by Defendants' violations of the Trafficking Victims Protection Act ("TVPA"), specifically 18 U.S.C. §§ 1589 (forced Labor) and 1590 (trafficking), and to pursue civil remedies expressly authorized by § 1595. The wrongful conduct alleged herein was carried out through a coordinated joint-venture scheme spanning Singapore, Hong Kong, and the United States.

## III.    JURISDICTION & VENUE

**FEDERAL Question / Article III Jurisdiction (28 U.S.C. § 1331)**

The court has subject matter jurisdiction over the claims asserted herein arising under and pursuant to the Trafficking Victims Protection Act of 2000 ("TVPA"), as implemented through Chapter 77 of Title 18 of the United States Code, specifically 18 U.S.C. § 1595 (civil remedy) based on violations of 18 U.S.C. §§ 1589 (forced Labor) and 1590 (trafficking). Supplemental jurisdictions exist for the plaintiff to joinder of the party under rule.

Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 if any party objects to joinder or the Court dismisses the joinder of National Australia Bank, or any party under a dependent claim, for lack of jurisdiction pursuant to Rule 19, so that Plaintiff's claims may proceed.

The Court also has extraterritorial jurisdiction over involuntary servitude, forced labor, human trafficking, conspiracy, and obstructing enforcement offenses committed overseas pursuant to 18 U.S.C. §§ 1589, 1590, and 3271. If the Court finds that joinder of National Australia Bank, or any party under a dependent claim, is inconvenient under its extraterritorial jurisdiction or that such party lacks sufficient connection to the United States and insufficient presence within this Court's jurisdiction, the Court must nevertheless proceed to adjudicate Plaintiff's claims.

*18 U.S.C. § 1595 CIVIL REMEDY - 3*

Pro Se Civil Complaint

The Court also has extraterritorial jurisdiction pursuant to 18 U.S.C. § 1596 over forced labor, human trafficking, conspiracy, and obstructing enforcement offenses committed overseas. However, Rule 19 provides for dismissal of a party if its U.S. presence is not sufficient and dismissal is required. If the Court finds that a foreign defendant lacks presence in the United States and determines it necessary to dismiss that party to proceed, the Court must nevertheless continue to adjudicate Plaintiff's claims.

This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and diversity of citizenship exists. Venue is proper under 28 U.S.C. § 1391(b) because two Defendants maintain offices within this District, or, in the alternative, complete diversity exists.

## IV. THE PARTIES TO THIS COMPLAINT

### Plaintiff

Sajjad Nasir is an individual residing in New South Wales, Australia. Plaintiff is a victim of trafficking and forced labor, as alleged herein, and brings this action on his own behalf pursuant to 18 U.S.C. § 1595.

### Defendants

Defendant Equinix Inc. is a Delaware corporation with its principal place of business in California, doing business in the State of Washington. Equinix is a citizen of Delaware and California for diversity purposes. Equinix maintains and operates the SYD1 facility (39 Gardeners Road, Alexandria, NSW, Australia), which serves as the originating Foreign Point and co-location infrastructure for international submarine cable circuits—specifically PPC-1—connecting directly to the United States Territory of Guam. Under 47 C.F.R. § 43.82, Defendant China Unicom acts as a Common Carrier and Capacity Holder holding an Indefeasible Right of Use (IRU) or Inter-Carrier Lease (ICL) across these circuits, utilizing Equinix's SYD1 facility to route international telecommunications traffic into United States territorial jurisdiction. Equinix further maintains

*18 U.S.C. § 1595 CIVIL REMEDY - 4*

Pro Se Civil Complaint

physical data center operations in this District at its Seattle SE2 facility (The Westin Building Exchange, 2001 Sixth Avenue) and Seattle SE3 facility (2020 Fifth Avenue).

Defendant National Australia Bank ("NAB") is a financial institution organized under the laws of Australia, with its principal executive offices located at Level 28, 395 Bourke Street, Melbourne, Australia, and a branch office at 245 Park Avenue, New York, New York. NAB maintains a sponsored Level 1 American Depositary Receipt ("ADR") program in the United States, which trades on the OTC market under the symbol NABZY, with CUSIP number 632525408, and is managed by Deutsche Bank Shareholder Services at 48 Wall Street, New York, New York. NAB has filed registration statements with the Securities and Exchange Commission for its ADR program, including Form F-6 registration statements. NAB has therefore voluntarily submitted to the jurisdiction of the United States by establishing and maintaining an ADR program, appointing a U.S. transfer agent, and filing with the SEC. NAB is also subject to personal jurisdiction in the United States through its New York branch office, as well as its administration of structured debt facilities, credit lines, and security encumbrances placed upon the revenue streams and operational assets of the U.S.-landing PPC-1 submarine cable system.

Defendant China Unicom is a Chinese state-owned enterprise that, through its subsidiary China Unicom (Hong Kong) Limited, is designated on the OFAC Non-SDN Chinese Military-Industrial Complex (CMIC) List under Executive Order 13959, with program tag CMIC-EO13959. China Unicom (Hong Kong) Limited was registered with the U.S. Securities and Exchange Commission as a foreign private issuer, filed annual reports on Form 20-F, and maintained American Depositary Shares (ADSs) listed on the New York Stock Exchange under the ticker symbol CHU US. China Unicom, through its U.S. subsidiary China Unicom (Americas) Operations Limited, is registered with the Federal Communications Commission as a Private Service Provider, maintains a headquarters address at 13800 Coppermine Road, Herndon, Virginia, and has a designated agent for service of process in Washington, D.C. (Robert Stup, Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037). China Unicom holds capacity rights and licenses under the Cable Landing License Act (47 U.S.C. §§ 34–39) and 47 C.F.R. § 43.82 as a Capacity Holder across transpacific subsea routes. China Unicom maintains physical network hardware and Point-of-Presence operations in this District inside The Westin

*18 U.S.C. § 1595 CIVIL REMEDY - 5*

Pro Se Civil Complaint

Building (2001 Sixth Avenue) and 2020 Fifth Avenue in Seattle. China Unicom operates the facility at 2 Tai Seng Avenue, Singapore, which is designated as a Point of Presence (PoP) station and carrier-neutral data center. This facility is the location where Plaintiff was trafficked and forced to perform manual labor. The facility is connected to the FCC-licensed PPC-1 submarine cable system, which lands in Guam, a U.S. territory, and is therefore subject to U.S. jurisdiction. China Unicom is therefore subject to personal jurisdiction in the United States through its SEC registration and NYSE listing, its FCC filings and U.S. subsidiary, its designated agent for service in Washington, D.C., its Virginia headquarters, its local Seattle network footprint, and its ownership and operation of a facility connected to an FCC-licensed submarine cable system.

**Service Addresses**

| Party Type | Name | Address |
|---|---|---|
| Plaintiff | Sajjad Nasir | 30 Railway Terrace, Granville NSW 2142, Australia |
| Defendant 1 | Equinix Inc. | Equinix SE3, 2020 Fifth Avenue, Seattle, WA 98121 USA |
| Defendant 2 | National Australia Bank Limited | c/o National Australia Funding (Delaware) Inc., 245 Park Avenue, 28th Floor, New York, NY 10167, USA |
| Defendant 3 | China Unicom (Americas) Operations Ltd. | c/o Robert Stup, Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037, USA |

## V. FILING CHORNOLOGY

The Plaintiff's proceedings before the United States District Courts involved a series of procedural events concerning the filing of applications, payment of filing fees, requests for issuance of summons, and subsequent dismissals. The relevant procedural history is set out chronologically below.

*18 U.S.C. § 1595 CIVIL REMEDY - 6*

Pro Se Civil Complaint

**30 May 2026:** Plaintiff filed the complaint action (2:26-cv-01853-LK) in the United States District Court for the Western District of Washington, pro se, together with an application to proceed without prepayment of fees.

**30 May 2026:** The federal district court clerk's office marked the application to proceed without prepayment of fees as defective immediately after filing, thereby obstructing the filing of the complaint and forcing payment of the fee to proceed.

**6 June 2026:** Plaintiff's request for issuance of summons was denied, along with authorization to serve in a foreign country under the Hague Convention.

**14 June 2026:** Plaintiff filed an application for court appointed counsel and a motion for change of venue due to persistent obstruction and hostility from the clerk's office.

**24 June 2026:** Judge Lauren King of the United States District Court for the Western District of Washington dismissed the complaint without prejudice.

**25 June 2026:** The District Court dismissed the application, declined to issue summons, and directed Plaintiff to refile the matter as a new application.

## VI. STATEMENT OF CLAIMS

### FACTUAL BACKGROUND LEADING TO DEFENDANTS' ALLEGED TRAFFICKING

The events underlying the alleged conduct occurred against the backdrop of a series of United States regulatory, national security, and telecommunications proceedings involving China Unicom-related entities. As set forth more fully below, those proceedings identified repeated regulatory concerns regarding compliance, national security, foreign ownership, and continued authorization to operate within the United States. Plaintiff alleges that, rather than complying with those regulatory obligations and enforcement measures, Defendants ignored, failed to comply with, or sought to evade them through subsequent conduct, corporate restructuring, and other actions alleged in this Complaint. The following background is provided solely to summarize the regulatory history and factual context preceding the events alleged herein and is not asserted as an independent basis for liability.

Prior to the period beginning in 2020, China Unicom Group maintained a multilayered ownership and operational structure that contributed to regulatory ambiguity within the United

*18 U.S.C. § 1595 CIVIL REMEDY - 7*

Pro Se Civil Complaint

States. At the top of the structure, ownership and control remained firmly held by the People's Republic of China through the state-controlled parent entity, China Unicom Group. Beneath the PRC parent, the corporate chain proceeded through China Unicom (A-Share Company), intermediate offshore holding entities in the British Virgin Islands, and China Unicom (Hong Kong) Limited, which served as the publicly traded international arm of the enterprise. This upper-tier ownership structure remained stable and effectively locked throughout the relevant period; the 2011 cross-shareholding transaction with Telefónica S.A. did not modify this control structure, as Telefónica acquired only a minority interest without obtaining operational authority or governance rights. Below the Hong Kong entity, however, the operational footprint in the United States was fragmented across several affiliated entities—such as China Unicom USA Corporation (which held FCC international Section 214 authorizations), China Unicom America, China Unicom International, and China Unicom Global—that operated Points of Presence, routing centers, or wholesale carrier functions without clear corporate lineage in SEC disclosures. Between 2014 and 2015, China Unicom Group transferred its physical tower infrastructure assets into China Tower Corporation, further separating physical asset ownership from operational routing activities. Between 2016 and 2017, U.S. agencies identified discrepancies between the scale of wholesale routing activity conducted through these unlisted entities and the limited declared operations of the formally recognized subsidiary, prompting increased regulatory scrutiny.

Starting in early 2020, the United States "Team Telecom"—the ad hoc interagency arrangement of the Departments of Justice, Defense, and Homeland Security—determined that state-controlled foreign telecommunications carriers presented unacceptable risks of national security exploitation. Formalized by Executive Order 13913 on April 4, 2020, which established the Committee for the Assessment of Foreign Participation in the United States Telecommunications Services Sector, Executive Branch agencies unanimously recommended that the FCC revoke operating authorizations. These recommendations were grounded in documented cybersecurity vulnerabilities, inaccurate statements made to federal authorities regarding U.S. record storage, inaccurate public representations concerning cybersecurity practices, and operations providing opportunities for PRC state actors to engage in economic espionage and communications misrouting.

*18 U.S.C. § 1595 CIVIL REMEDY - 8*

Pro Se Civil Complaint

By mid-2020 and continuing into 2021, these regulatory findings resulted in formal license revocations and operational cancellations across multiple federal dockets, including GN Docket No. 20-110, ITC-214-20020728-00361, and ITC-214-20020724-00427 (China Unicom Americas), as well as WC Docket No. 18-89. Concurrently, pursuant to Executive Order 13959, the Department of the Treasury's Office of Foreign Assets Control (OFAC) placed China Unicom (Hong Kong) Limited and its associated trading security names on the Non-SDN Chinese Military-Industrial Complex (CMIC) List, including its securities trading in Singapore under ticker K3ID SG, in Hong Kong under 762 HK, and in the United States under CHU US. These regulatory actions collectively stripped Defendants of their authority to operate within the United States telecommunications sector.

By late 2024, Defendant China Unicom (Hong Kong) Limited was once again subpoenaed by the U.S. House Select Committee on the Chinese Communist Party (Chairman John Moolenaar, Ranking Member Raja Krishnamoorthi) for information seeking substantial records regarding its employees, operations, affiliates, data centers, Points of Presence, and cloud activities still operating in the United States. Similarly, Defendant Equinix, Inc. was subpoenaed by the U.S. Securities and Exchange Commission (SEC Subpoena, March 20, 2024) following a short-seller report published by Hindenburg Research (March 20, 2024), which was subsequently followed by a shareholder class action lawsuit (*In re Equinix, Inc. Securities Litigation*, Case No. 4:24-cv-01680 (N.D. Cal. 2024)). That litigation specifically alleged that (a) Equinix misclassified maintenance expenses as growth capital expenditures to artificially inflate its Adjusted Funds from Operations (AFFO); and (b) Equinix made false and misleading statements about its financial performance and the true state of its business operations. These continued oversight actions, along with related civil and regulatory proceedings, ultimately led Defendants to conspire to evade U.S. sanctions through a novel evasion scheme, where they invented several shell entities and related them through various corporate relationships to dilute, hide, or disguise the identity of the sanctioned property. Specifically, Defendants China Telecom and China Unicom continued to own and operate their long-standing facility at 2 Tai Seng Avenue, Singapore—a Point of Presence, cloud, and infrastructure hub—by rebranding its four property blocks and showing various shell entities to operate these activities, none of which concealed their affiliation with the PRC while

*18 U.S.C. § 1595 CIVIL REMEDY - 9*

Pro Se Civil Complaint

maintaining FCC cable landing authority throughout, utilizing forced labor to perform manual network staging connected to U.S.-landing infrastructure.

## FACTUAL ALLEGATIONS: FRAUDULENT RECRUITMENT, TRAFFICKING, AND FORCED LABOR

Between September 30, 2024, and January 19, 2025, Defendants Equinix Inc., China Unicom, and National Australia Bank (NAB) knowingly and intentionally orchestrated a deceptive recruitment, synthetic identity, and cross-border trafficking scheme in violation of 18 U.S.C. §§ 1590 and 1592. The Defendants initiated this scheme through fraudulent employment advertisements posted across professional job boards, utilizing fictitious recruitment agencies, sham front-office identities, and manufactured synthetic compliance profiles that falsely represented Plaintiff Sajjad Nasir was being recruited for legitimate, long-term technical employment stationed at Defendant Equinix's physical facility located at 639 Gardeners Road, Sydney, Australia (SY1). Having successfully induced Plaintiff into accepting employment and commencing physical labor at the SY1 facility under these false pretenses—with Defendant NAB utilizing specific branch channels (Branch Code 084-435) to execute off-grid financial transfers, back-dated banking entries, and non-SWIFT tracked transactions to disguise the true source and destination of funds—Defendants executed a premeditated cross-border transfer. As part of a continuous, unified scheme to evade U.S. national security prohibitions and FCC license revocations, Defendants knowingly transported, transferred, and harbored Plaintiff from Equinix's Sydney facility to an operational facility owned, operated, and controlled by China Unicom at 2 Tai Seng Avenue, Singapore (the Tai Seng Exchange). The explicit purpose of this fraudulent recruitment, document manipulation, and international transport was to validate Equinix's SY1 facility as an operational front office, establish unrecorded physical network nodes, and manufacture artificial corporate lineage to conceal China Unicom's data routing activities.

### Coercive Control, Physical Isolation, Forced Labor, and Financial Abuse (18 U.S.C. §§ 1589, 1592)

Between January 21, 2025, and March 17, 2025, Defendants China Unicom, Equinix Inc., and NAB violated 18 U.S.C. §§ 1589 and 1592 by knowingly obtaining and maintaining Plaintiff's labor and services through a systematic scheme of physical coercion, contractual fraud, debt

*18 U.S.C. § 1595 CIVIL REMEDY* - 10

Pro Se Civil Complaint

manipulation, and abuse of legal process. Upon Plaintiff's arrival at the Tai Seng Exchange in Singapore, Defendant China Unicom subjected Plaintiff to extreme physical isolation and coercive transportation, forcing Plaintiff to lie face down on the covered floor of cargo vans during transit between facilities to conceal the physical location, routing hardware, and operational footprint of the enterprise under threat of immediate termination, deportation, and legal action. Under these coercive conditions, Plaintiff was compelled to perform grueling manual labor consisting of transporting, handling, rack-mounting, and staging heavy IT and telecommunications hardware directly connected to the PPC-1 subsea cable system. To enforce compliance, prevent Plaintiff from leaving, and maintain total operational control, Defendants engineered a fraudulent employment contract paired with false banking transactions administered through Defendant NAB, constructing an artificial employment debt and asserting that Plaintiff personally owed operational corporate expenses under threat of manufactured civil and criminal liabilities if he attempted to cease work. When Plaintiff suffered severe spinal trauma as a direct result of the compelled heavy manual labor, Defendants further abused legal and administrative processes by deliberately denying Plaintiff access to emergency medical evaluation and diagnostic care, systematically maintaining his physical isolation to perpetuate the forced labor scheme in violation of federal law.

.3

**FACTS – ALLEGED, COERCION, AND ABUSE OF PROCESS (18 U.S.C. § 1589 FORCED LABOR)**

Between September 30, 2024, and March 17, 2025, Defendants Equinix Inc., National Australia Bank (NAB), and China Unicom violated 18 U.S.C. § 1589 by knowingly obtaining and maintaining Plaintiff Sajjad Nasir's forced labor and services through a scheme employing employment contractual fraud, physical isolation, coercive transportation methods, false banking transactions, abuse of legal and administrative processes, and a pattern intended to cause Plaintiff to believe he would suffer serious harm. This deceptive recruitment scheme was initiated at Defendant Equinix Inc.'s physical commercial facility located at 639 Gardeners Road, Sydney, Australia ("SY1"), where Defendants manufactured false corporate organizational identities, synthetic compliance profiles, and fraudulent personnel credentials to trap Plaintiff in cross-border transit to Singapore. To effectuate this forced labor offense, Defendants engineered a fraudulent employment contract paired with false banking transactions administered through Defendant NAB

*18 U.S.C. § 1595 CIVIL REMEDY* - 11

Pro Se Civil Complaint

(operating through Branch Code 084-435 / Branch ID 8173 and personal account number 734158173). Defendants manipulated these records and moved off-grid cash specifically to bypass the U.S. SWIFT tracking system, constructing an artificial employment debt that forced Plaintiff to personally bear corporate, operational, and travel expenses under explicit threats of manufactured legal and financial liabilities if he attempted to cease work. Under these coercive conditions, Plaintiff was compelled into forced labor consisting of transporting, handling, rack-mounting, and staging telecommunications and IT network hardware at 2 Tai Seng Avenue (TSX Securities Exchange / Tai Seng Exchange, Singapore). The explicit corporate objective of compelling Plaintiff's forced labor was to build, operationalize, and conceal a network of front-office facilities for Defendant China Unicom—an entity prohibited from providing telecommunications services within the United States under FCC Order 22-9 and designated on the Non-SDN Chinese Military-Industrial Complex (CMIC) List under Executive Order 13959. Crucially, the forced labor compelled by Defendants was used to physically stage, rebrand, and transfer network hardware—primarily manufactured by vendors on the FCC Covered List—into newly invented shell entities to disguise sanctioned property, bypass regulatory revocations, and maintain uninterrupted data routing through subsea cable infrastructure directly connected to U.S. jurisdiction.

**FACTS – ALLEGED PHYSICAL RESTRAINT & HARM (18 U.S.C. § 1589 FORCED LABOR)**

To enforce compliance, maintain physical isolation, and conceal the enterprise's operational footprint during the forced labor scheme, Defendant China Unicom repeatedly subjected Plaintiff to physical restraint, transporting Plaintiff face down on the covered floor of cargo vans during transit between facilities associated with China Unicom and Equinix in Singapore. As a direct result of the compelled forced labor involving heavy manual handling and rack-mounting of high-density IT and telecommunications hardware performed under these physically coercive and abusive conditions, Plaintiff sustained severe acute physical spinal trauma. Following this physical harm, Defendants further extended their systemic violations of 18 U.S.C. § 1589 by continuing to extract forced labor while abusing legal and administrative processes, deliberately denying Plaintiff access to emergency medical evaluation and diagnostic treatment to maintain his physical isolation, conceal the workplace injury, and perpetuate the forced labor

*18 U.S.C. § 1595 CIVIL REMEDY* - 12

Pro Se Civil Complaint

cycle. Throughout this timeframe, Defendant Equinix Inc. actively facilitated this forced labor scheme and operational isolation by manipulating facility security passes and identity credentials across its owned SY1 facility in Sydney and the Tai Seng Exchange in Singapore, while Defendant NAB executed fabricated off-grid transactions to enforce the artificial debt bondage, mask the illicit financial flows sustaining the forced labor venture, and prevent Plaintiff from accessing funds to seek independent care or depart, despite Plaintiff having exhausted remedial procedures across both Australian and Singaporean jurisdictions.

## . UNLAWFUL INTERFERENCE, OBSTRUCTION, AND IDENTITY EXPLOITATION (18 U.S.C. § 1589(B))

Between March 20, 2025, and June 6, 2025, Defendants National Australian Bank citing in active coordination to aid, abet, and protect Defendants China Unicom, Equinix Inc., and National Australia Bank (NAB)—violated 18 U.S.C. § 1589(b) by intentionally obstructing, attempting to obstruct, and interfering with the enforcement of federal forced labor prohibitions. Following a late-2024 subpoena issued to Defendant China Unicom by the U.S. House Select Committee on the Chinese Communist Party demanding updated operational and infrastructure disclosures, Defendants exploited Plaintiff's government-issued identity documents and taxation filings to manufacture synthetic compliance profiles for China Unicom's illicit front offices. To further obstruct federal oversight and evade liability, Defendant National Australian Bank Insurance engineered a fraudulent workers' compensation insurance claim (Certificate #252790301), while coordinating with Defendant NAB to execute off-grid cash transfers and back-dated transactions bypassing the U.S. SWIFT tracking system. Operating under this fraudulent insurance claim, Defendants National Australian Bank Insurance, Dr. Diwan, and Synergy Radiology persistently solicited falsified medical reports and diagnostic test results, repeatedly delayed and canceled critical diagnostic appointments, and issued threats and harassment to undermine the documented origin of Plaintiff's forced labor injuries, conceal the enterprise's unlawful activities, and obstruct enforcement authorities.

## SEVERE PHYSICAL HARM, ACUTE SPINAL TRAUMA, AND PERMANENT DISABILITY

The forced labor scheme directly caused Plaintiff Sajjad Nasir to suffer severe, acute physical spinal trauma and permanent physical disability as a direct result of being compelled to

*18 U.S.C. § 1595 CIVIL REMEDY - 13*

Pro Se Civil Complaint

perform heavy manual labor involving the handling, transporting, and rack-mounting of high-density IT and telecommunications hardware. This heavy manual labor was enforced under physically abusive conditions inside a repurposed facility at 2 Tai Seng Avenue (Tai Seng Exchange, Singapore) that was never structurally engineered or safely equipped to host heavy telecommunications infrastructure, but was instead improvised to hide blacklisted, sanctioned hardware for Defendant China Unicom. The physical harm was further exacerbated by Defendant China Unicom physically restraining Plaintiff during transit on the covered floor of cargo vans, and was subsequently compounded when Defendants National Australian Bank Insurance, Dr. Diwan, and Synergy Radiology deliberately blocked emergency medical evaluation, falsified diagnostic records, and denied required treatment, thereby knowingly perpetuating Plaintiff's physical suffering and permanent impairment to protect the forced labor venture.

## VII. RELIEF

**FIRST CLAIM FOR RELIEF-FORCED LABOR IN VIOLATION 18 U.S.C. § 1589.**

*(Defendants Equinix Inc., China Unicom, )*

Plaintiff alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein. The Defendants knowingly obtained and maintained Plaintiff's labor and services by patterns of abusive behavior, threats of harm, physical restraint, artificial debt bondage, and abuse and threatened abuse of legal and administrative processes as described by the forced labor provisions of 18 U.S.C. § 1589.

Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.As alleged herein, Defendants held Plaintiff in forced labor, transporting Plaintiff face down on cargo van floors and forcing him to perform heavy manual labor transporting, handling, rack-mounting, and staging telecommunications hardware under dangerous and physically coercive conditions. Defendants Equinix Inc., and China Unicom, conspired to compel Plaintiff to work against his will for their benefit, by the use of force, the threat of force, debt bondage, or the threat of legal coercion.

*18 U.S.C. § 1595 CIVIL REMEDY - 14*

Pro Se Civil Complaint

Defendants directed, assisted, conspired, and acted in concert with each other to create and perpetuate a system of forced labor prohibited by 18 U.S.C. § 1589.

As a direct and proximate result of these actions, Plaintiff has sustained severe physical injuries, including acute spinal trauma and permanent disability, severe emotional distress, and substantial economic losses. Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

**SECOND CLAIM FOR RELIEF -TRAFFICKING WITH RESPECT TO FORCED LABOR OR INVOLUNTARY SERVITUDE IN VIOLATION OF 18 U.S.C. §§, 1589, AND 1590 –**

*(Defendants Equinix Inc., China Unicom,))*

Plaintiff leagues and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein. By enticing, recruiting, harboring, transporting, providing, and obtaining Plaintiff to accept employment through fraud and deception initiating at Equinix's physical facility in Sydney, Australia, and transporting him across international borders to Singapore for the purpose of subjecting him to forced labor and involuntary servitude, Defendants engaged in trafficking of Plaintiff in violation of 18 U.S.C. §§, 1589, and 1590. Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

Defendants Equinix Inc. and China Unicom, conspired to compel Plaintiff to work against his will for their benefit, by the use of force, the threat of force, or the threat of legal coercion.As a direct and proximate result of Defendants' actions, Plaintiff has sustained damages, including physical injury, severe acute spinal trauma, permanent disability, emotional distress, and economic losses.

Plaintiff therefore is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

*18 U.S.C. § 1595 CIVIL REMEDY - 15*

Pro Se Civil Complaint

**THIRD CLAIM FOR RELIEF -OBSTRUCTING, ATTEMPTING TO OBSTRUCT, OR INTERFERING WITH ENFORCEMENT IN VIOLATION OF 18 U.S.C. §§ 1590(B)**

*(Defendants* National Australian Bank*)*

15. Plaintiff alleges s and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

Between March 20, 2025, and June 6, 2025, Defendants National Australian Bank contacted and interfered with medical providers, administrative bodies, and diagnostic facilities handling Plaintiff's care.

Upon information and belief, Defendants sought to undermine Plaintiff's injury, fabricate false medical reports, cancel medical appointments, and exploit government identity documents to silence Plaintiff, cover up the origin of his workplace spinal injuries, and obstruct the investigation and enforcement of the forced labor and trafficking violations committed by Defendants China Unicom, Equinix Inc., and National Australia Bank. Defendants sought to harass and terrorize Plaintiff and cause him to be unable to seek medical treatment or enforce his rights.

As of March 2025, Defendants were fully aware that the forced labor, trafficking, and physical injuries were subject to legal and regulatory scrutiny following congressional subpoenas and administrative filings. Defendants National Australian Bank obstructed, attempted to obstruct, and interfered with the enforcement of the federal prohibitions against forced labor under 18 U.S.C. § 1589(a) and trafficking under 18 U.S.C. § 1590(a), in direct violation of 18 U.S.C. §§ 1589(b) and 1590(b).

16. Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.
As a direct and proximate result of Defendants' actions, Plaintiff has sustained damages, including aggravated physical spinal trauma, permanent physical disability, emotional distress, and economic losses.

Plaintiff therefore is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

*18 U.S.C. § 1595 CIVIL REMEDY* - 16

Pro Se Civil Complaint

WHEREFORE, Plaintiff respectfully requests that judgment be granted as follows:

    (a) Money damages for each Claim for Relief;

    (b) Punitive and exemplary damages according to proof;

    (c) Attorneys' fees and costs for Plaintiff against the Defendants; and

    (d) Such other further relief as the Court may deem just and proper.

    Plaintiff demands a trial by jury.

## VIII.   CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: ⌨   07/07/2026

Signature of Plaintiff

Printed Name of Plaintiff    Sajjad Nasir

*18 U.S.C. § 1595 CIVIL REMEDY* - 17