# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 27. Motion for** | Transfer to the District Court -Issuance of the Summons Under Rule 4(f)(2)(A) PM|

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form27instructions.pdf](http://www.ca9.uscourts.gov/forms/form27instructions.pdf)

**9th Cir. Case Number(s)** | 26-4162

**Case Name** | Nasir v. China Unicom et al

**Lower Court or Agency Case Number** | 2:26-cv-01853-LK

What is your name? | Sajjad Nasir

1. **What** do you want the court to do?

1.  Instead of repeatedly stating in orders that there is 'no appearance by the appellees' **(Entered: 08/03/2026 02:56 PM)** and referring all urgent matters to the panel assigned to decide the merits of this appeal however , the Plaintiff has now received a written request from the Administration of the Hong Kong SAR, China, arising from a defective order issued by the District Court Clerk under Rule 4(f)(1);

   a)   AcAccordingly, the Plaintiff requests that [Motion 36] referral of appeal matter appended/alternative [2:26-cv-01853-LK] be referred to the District Court for Consideration, and the District Court new filing [Case 2:26-cv-02685-TL] be consolidated as a single matter
   b)   Alternatively , Issue authorization for service abroad under Rules **Rule 4(f)(2)(A)**

2. **Why** should the court do this? Be specific. Include all relevant facts and law that would persuade the court to grant your request. *(Attach additional pages as necessary. Your motion may not be longer than 20 pages.)*

1. The Clerk's failure to issue proper summons in Case 2:26-cv-01853-LK has prevented service and created the very "no appearance" the Court now cites as a reason to proceed without appellees [See Docket 38] .

2. The Plaintiff filed an alternative pleading with the District Court, which was sabotaged by the District Court in coordination with the Appeal Court Order [See Docket 38] , causing the Plaintiff to file a new filing.

3. The Plaintiff has filed a new matter with the District Court: Case 2:26-cv-02685-TL.

4. The Court has instead of referring the matter to the District Court, kept it pending and referred it to the appeal panel for summary dismissal, avoiding the fundamental defect—the District Court Clerk's failure to issue proper summons under Rule 4(f)(1).

Your mailing address:

sajjadqut01@outlook.com

City | State | Zip Code

Prisoner Inmate or A Number (if applicable)

**Signature** | s/Sajjad Nasir | **Date** | 07/24/2026

*Feedback or questions about this form? Email us at* [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)

**Form 27**



香港特別行政區政府
政務司司長辦公室轄下行政署

中 華 人 民 共 和 國
香 港 添 馬 添 美 道 2 號

本函檔號 Our Ref.:　　AW-450-015-010-015-012-999

來函檔號 Your Ref.:

The Government of
The Hong Kong Special Administrative Region
Administration Wing,
Chief Secretary for Administration's Office

2 Tim Mei Avenue, Tamar, Hong Kong
**People's Republic of China**

Room 321, 3/F., East Wing
Central Government Offices
Tel: (852) 2810 3969
Fax: (852) 2842 8897

## By Registered Mail

29 June 2026

Sajjad Nasir
U29 30-44 Railway Terrace
Granville
NSW, 2142
Australia

Dear Sir/Madam,

**Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters signed at the Hague on 15 November 1965**

**China Unicom**

With reference to your two requests for service of judicial documents on the above party, we regret that we are unable to accede to them because of the following reasons:

(i)　the request is not forwarded to us by a competent forwarding authority.  For information on competent forwarding authorities in Australia, please refer to the Convention's website at https://www.hcch.net/en/states/authorities/details3/?aid=878. If you are indeed a competent forwarding authority under Article 3 of the Convention, please provide us with the relevant information setting out your competence for our information.  Kindly also be reminded that the name and address of the applicant (i.e. the forwarding authority) should be entered in the corresponding column on page 1 of the request form;

(ii)　you may wish to note that the jurisdiction of the High Court of Hong Kong Special Administrative Region of the People's Republic of China in effecting service of process from a jurisdiction outside Hong Kong SAR, China is limited to such relating to <u>civil or commercial proceedings</u> in a court or tribunal of a country or place outside Hong Kong.  Having preliminarily reviewed your request, the basis for jurisdiction at issue in the case concerns 18 U.S. Code (Crimes and Criminal Procedure). Therefore, the case appears to be criminal in nature and may fall outside the applicable scope of the Convention as afore-explained.  Please advise us otherwise on the nature of the matters involved in your request should you wish us to consider it further;

(iii)　the request form and documents to be served are not furnished in duplicate in accordance with Article 3 of the Convention.  Please furnish a duplicate copy; and

- 2 -

(iv) references to "Hong Kong" are listed on an equal basis with references to a sovereign state, viz. "Australia" in the request form and/or documents for service (see examples flagged). Please amend "Hong Kong" therein to "Hong Kong SAR, China", which stands for the Hong Kong Special Administrative Region of the People's Republic of China, before sending the request to us again. Kindly be reminded that such amendments to the request should be **typewritten** but not handwritten. If you deem typewritten amendments impossible, please provide us with a cover letter to explain so, and to confirm and stipulate in details such necessary and appropriate amendments which could not be typewritten to the original for our consideration.

I hereby return all the documents for your action as appropriate, please.

Yours faithfully,

(Anson CHAN)
for Chief Secretary for Administration

Encl.

# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
### DEMANDE AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ÉTRANGER D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.
Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965.

| Identity and address of the applicant<br>Identité et adresse du requérant<br><br>**Sajjad Nasir**<br>Parcel Locker 10142 53196 12 Memorial Avenue<br>MERRYLANDS NSW 2160 , Australia | Address of receiving authority<br>Adresse de l'autorité destinataire<br>**Chief Secretary for Administration of HKSAR**<br>Government (Attn: Mr Anson CHAN)<br>Room 321, 3/F. East Wing ,Central Government Offices ,<br>2 Tim Mei Avenue, Admiralty, Hong Kong SAR, China |
|---|---|

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.:
Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :

**(identity and address)** China Unicom
(identité et adresse)

75th Floor, The Center,
99 Queen's Road Central, Hong Kong SAR, China

| | | |
|---|---|---|
| X<br>☐ | a) | **in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention***<br>selon les formes légales (article 5, alinéa premier, lettre a)* |
| ☐ | b) | **in accordance with the following particular method (sub-paragraph b) of the first paragraph of Article 5)*:**<br>selon la forme particulière suivante (article 5, alinéa premier, lettre b)* : |
| ☐ | c) | **by delivery to the addressee, if he accepts it voluntarily (second paragraph of Article 5)***<br>le cas échéant, par remise simple (article 5, alinéa 2)* |

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes* - with the attached certificate.
Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes* - avec l'attestation ci-jointe.

**List of documents** / Énumération des pièces

1. CERTIFICATE ATTESTATION
2. Summons
3. Complaint

* if appropriate / s'il y a lieu

| Done at / Fait à _Sydney, Australia_<br><br>The / le _13 June 2026_<br><br>Sydney, Australia   13 June 2026 | Signature and/or stamp<br>Signature et / ou cachet<br><br>*[signature]* |
|---|---|

Permanent Bureau September 2011

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington  ▾

| | |
|---|---|
| Sajjad Nasir ) | |
| ) | |
| ) | |
| ) | |
| ———————————————— ) | |
| *Plaintiff(s)* ) | |
| v. ) | Civil Action No. 2:26-cv-01853-LK |
| 1. China Unicom 2. Equinix Inc 3. National Australian ) | |
| Bank 4. Australian Superannuation Fund 5. GIO ) | |
| Insurance 6. Dr Asish Diwan 7. Synergy Radiology ) | |
| ) | |
| ———————————————— ) | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    China Unicom

75th Floor, The Center,
99  Queen's Road Central,
Hong Kong SAR , China

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Parcel Locker 10142 53196
12 Memorial Avenue
MERRYLANDS NSW 2160
Australia

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:    6/16/2026 _____    _____
*Signature of Clerk or Deputy Clerk*

Pro Se Civil Complaint

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAJJAD NASIR

      Plaintiff(s),

1. EQUINIX INC.
2. NATIONAL AUSTRALIA BANK
3. CHINA UNICOM

      Defendant(s).

CASE NO. 2:26-cv-02685-TL

***ALTERNATIVE STATEMENTS & LEAVE TO (DIS) JOINDER OF CLAIMS***

Refilled ECF No. 3, Order of Dismissal, W.D. Wash., Case No. 26-cv-01853-LK (June 25, 2026).

Jury Trial ☒: Yes   ☐ No

## I.    *PRELIMINARY STATEMENT*

Plaintiff Sajjad Nasir alleges the following:

Alternative pleadings pursuant to Rule 8 seeking a civil remedy pursuant to **18 U.S.C. § 1595(a)** alleging violations of the Trafficking Victims Protection Act ("TVPA"), specifically **18 U.S.C. §§ 1590(a)** and **§ 1589**, while designating Defendant Equinix Inc. as principal with Defendant China Unicom under Civil Procedure Rule 20(a).

*18 U.S.C. § 1595 CIVIL REMEDY - 1*

Pro Se Civil Complaint

The Plaintiff seeks court leave for joinder of Defendant National Australia Bank pursuant to Federal Rules of Civil Procedure (Rule 18) for claims of alleged violations of the Trafficking Victims Protection Act ("TVPA"), specifically **18 U.S.C. § 1590(b)**, under Supplemental jurisdiction for Plaintiff's state-law claim pursuant to 28 U.S.C.

Plaintiff moves to disjoin all other defendants—Dr. Ashish Diwan, Synergy Radiology, Australian Superannuation Fund Ltd., and GIO Insurance—pursuant to Rule 82, as they do not satisfy jurisdiction or venue requirements.

Principal Defendants Equinix Inc. and China Unicom, as shown in statutory SEC filings, are incorporated within the United States and subject to its laws while maintaining offices in Seattle and Washington D.C., and holding Federal Communications Commission cable landing licenses for multiple U.S. and foreign landing stations—including 639 Gardeners Road, Sydney and 2 Tai Seng Avenue—operating through layered shell entities and false identities and engaging in trafficking and forced labor at locations subject to U.S. jurisdiction under **18 U.S.C. § 1596**.

Principal Defendants Equinix Inc. and China Unicom, in order to evade sanctions imposed under the OFAC Chinese Military Enterprise List, operated through multiple layers of shell entities using false identities and fabricated credentials to obscure their involvement and bypass regulatory actions. These shell entities served no legitimate purpose other than to shield the defendants from liabilities, avoid sanctions, and provide new identities to continue evading enforcement measures.

On 3 March 2025, the House Select Committee on China, investigating the national security risks posed by Chinese state-owned telecommunications companies, issued subpoenas to China Unicom seeking information about Points of Presence (PoPs), data centers, and cloud-related services. The shell entities themselves were set up to stage operations that were sustained by running trafficking batches of forced labor, with personnel identities and victim batch information further provided to evade regulatory actions. Both principal defendants actively concealed these facilities through the same shell structure, while also using the infrastructure to route regular trafficking batches. The information obtained from these operations was further exploited to sidestep regulatory actions related to non-compliance and potential license revocations. The Plaintiff was part of the defendants' third trafficking batch, directly linking them to the ongoing scheme.

Defendant National Australia Bank, listed with the SEC and maintaining offices in the United States to sell securities, allegedly violated **18 U.S.C. § 1590(b)** by actively providing assistance to both principal defendants in the trafficking and forced labor scheme. The Bank's involvement included

*18 U.S.C. § 1595 CIVIL REMEDY - 2*

Pro Se Civil Complaint

manipulating financial information and personnel account data of victims by moving cash illegally and fabricating financial transactions to evade SWIFT data scrutiny, thereby hindering and interfering with regulatory oversight in direct violation of **18 U.S.C. § 1590(b)**.

## II.     NATURE OF THE ACTION

his is a civil trafficking action brought under **18 U.S.C. § 1595** on behalf of the Plaintiff, who was subjected to and harmed by Defendants' forced labor and trafficking venture operating between September 30, 2024, and June 30, 2025. Plaintiff seeks to recover compensatory and statutory damages caused by Defendants' violations of the Trafficking Victims Protection Act ("TVPA"), specifically **18 U.S.C. §§ 1589** (forced labor) and **1590** (trafficking), and to pursue civil remedies expressly authorized by § 1595. The wrongful conduct alleged herein was carried out through a coordinated joint venture scheme spanning Singapore, Hong Kong, and the United States.

## III.     JURISDICTION & VENUE

The Court has jurisdiction over this action pursuant to **28 U.S.C. § 1331** and **18 U.S.C. § 1595(a)**, a federal question, this action arising under the Trafficking Victims Protection Act, specifically **18 U.S.C. §§ 1589** and **1590(a)**.

Subject to Rule 18(b) Joinder of Contingent Claims, supplemental jurisdiction exists for Plaintiff's claims against Defendant National Australia Bank under **18 U.S.C. § 1590(b)** pursuant to **28 U.S.C. § 1367**. The Court also has extraterritorial jurisdiction over involuntary servitude, forced labor, human trafficking, conspiracy, and obstructing enforcement offenses committed overseas pursuant to **18 U.S.C. § 3271** and **18 U.S.C. § 1596**.

Venue is proper pursuant to **28 U.S.C. § 1391(b)** because Defendant Equinix Inc. resides in and maintains offices within this District. In the alternative, complete diversity exists as Defendants are incorporated in different states and maintain offices, and the amount being sought exceeds $75,000.00.

*18 U.S.C. § 1595 CIVIL REMEDY - 3*

.

## IV. THE PARTIES TO THIS COMPLAINT

### Plaintiff

Sajjad Nasir is an individual residing in New South Wales, Australia. Plaintiff is a victim of trafficking and forced labor, as alleged herein, and brings this action on his own behalf pursuant to **18 U.S.C. § 1595**.

### Defendants

**Defendant Equinix Inc**. is a Delaware corporation with its principal place of business in California, doing business in the State of Washington. Equinix is a citizen of Delaware and California for diversity purposes. Equinix maintains and operates the SYD1 facility (39 Gardeners Road, Alexandria, NSW, Australia), which serves as the originating Foreign Point and co-location infrastructure for international submarine cable circuits—specifically PPC-1—connecting directly to the United States Territory of Guam. Under 47 C.F.R. § 43.82, Defendant China Unicom acts as a Common Carrier and Capacity Holder holding an Indefeasible Right of Use (IRU) or Inter-Carrier Lease (ICL) across these circuits, utilizing Equinix's SYD1 facility to route international telecommunications traffic into United States territorial jurisdiction. Equinix further maintains physical data center operations in this District at its Seattle SE2 facility (The Westin Building Exchange, 2001 Sixth Avenue) and Seattle SE3 facility (2020 Fifth Avenue).

**Defendant National Australia Bank ("NAB")** is a financial institution organized under the laws of Australia, with its principal executive offices located at Level 28, 395 Bourke Street, Melbourne, Australia, and a branch office at 245 Park Avenue, New York, New York. NAB maintains a sponsored Level 1 American Depositary Receipt ("ADR") program in the United States, which trades on the OTC market under the symbol NABZY, with CUSIP number 632525408, and is managed by Deutsche Bank Shareholder Services at 48 Wall Street, New York, New York. NAB has filed registration statements with the Securities and Exchange Commission for its ADR program, including Form F-6 registration statements. NAB has therefore voluntarily submitted to the jurisdiction of the United States by establishing and maintaining an ADR program, appointing a U.S. transfer agent, and filing with the SEC. NAB is also subject to personal jurisdiction in the United States through its New York branch office, as well as its

Pro Se Civil Complaint

administration of structured debt facilities, credit lines, and security encumbrances placed upon the revenue streams and operational assets of the U.S.-landing PPC-1 submarine cable system.

**Defendant China Unicom** is a Chinese state-owned enterprise that, through its subsidiary China Unicom (Hong Kong) Limited, is designated on the OFAC Non-SDN Chinese Military-Industrial Complex (CMIC) List under Executive Order 13959, with program tag CMIC-EO13959. China Unicom (Hong Kong) Limited was registered with the U.S. Securities and Exchange Commission as a foreign private issuer, filed annual reports on Form 20-F, and maintained American Depositary Shares (ADSs) listed on the New York Stock Exchange under the ticker symbol CHU US. China Unicom, through its U.S. subsidiary China Unicom (Americas) Operations Limited, is registered with the Federal Communications Commission as a Private Service Provider, maintains a headquarters address at 13800 Coppermine Road, Herndon, Virginia, and has a designated agent for service of process in Washington, D.C. (Robert Stup, Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037). China Unicom holds capacity rights and licenses under the Cable Landing License Act (47 U.S.C. §§ 34–39) and 47 C.F.R. § 43.82 as a Capacity Holder across transpacific subsea routes. China Unicom maintains physical network hardware and Point-of-Presence operations in this District inside The Westin Building (2001 Sixth Avenue) and 2020 Fifth Avenue in Seattle. China Unicom operates the facility at 2 Tai Seng Avenue, Singapore, which is designated as a Point of Presence (PoP) station and carrier-neutral data center. This facility is the location where Plaintiff was trafficked and forced to perform manual labor. The facility is connected to the FCC-licensed PPC-1 submarine cable system, which lands in Guam, a U.S. territory, and is therefore subject to U.S. jurisdiction. China Unicom is therefore subject to personal jurisdiction in the United States through its SEC registration and NYSE listing, its FCC filings and U.S. subsidiary, its designated agent for service in Washington, D.C., its Virginia headquarters, its local Seattle network footprint, and **its** ownership and operation of a facility connected to an FCC-licensed submarine cable system.

**Service Addresses**

| Party Type | Name | Address |
|---|---|---|
| Plaintiff | Sajjad Nasir | 30 Railway Terrace, Granville NSW 2142, Australia |
| Defendant 1 | Equinix Inc. | Equinix SE3, 2020 Fifth Avenue, Seattle, WA 98121, USA |
| Defendant 2 | China Unicom (Americas) Operations Ltd. | c/o Robert Stup, Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037, USA |

*18 U.S.C. § 1595 CIVIL REMEDY - 5*

Pro Se Civil Complaint

| Defendant 3 | National Australia Bank Limited | c/o National Australia Funding (Delaware) Inc., 245 Park Avenue, 28th Floor, New York, NY 10167, USA |
|---|---|---|

## V. FILING CHORNOLOGY

The Plaintiff's proceedings before the United States District Courts involved a series of procedural events concerning the filing of applications, payment of filing fees, requests for issuance of summons, and subsequent dismissals. The relevant procedural history is set out chronologically below.

**30 May 2026:** Plaintiff filed the complaint action (2:26-cv-01853-LK) in the United States District Court for the Western District of Washington, pro se, together with an application to proceed without prepayment of fees.

**30 May 2026:** The federal district court clerk's office marked the application to proceed without prepayment of fees as defective immediately after filing, thereby obstructing the filing of the complaint and forcing payment of the fee to proceed.

**6 June 2026:** Plaintiff's request for issuance of summons was denied, along with authorization to serve in a foreign country under the Hague Convention.

**14 June 2026:** Plaintiff filed an application for court appointed counsel and a motion for change of venue due to persistent obstruction and hostility from the clerk's office.

**24 June 2026:** Judge Lauren King of the United States District Court for the Western District of Washington dismissed the complaint without prejudice.

**25 June 2026:** The District Court dismissed the application, declined to issue summons, and directed Plaintiff to refile the matter as a new application.

*18 U.S.C. § 1595 CIVIL REMEDY - 6*

Pro Se Civil Complaint

# VI.        FACTS OF THE CLAIM

**FACTUAL BACKGROUND LEADING TO DEFENDANTS' ALLEGED TRAFFICKING**

The events underlying the alleged conduct occurred against the backdrop of a series of United States regulatory, national security, and telecommunications proceedings involving China Unicom-related entities. As set forth more fully below, those proceedings identified repeated regulatory concerns regarding compliance, national security, foreign ownership, and continued authorization to operate within the United States. Plaintiff alleges that, rather than complying with those regulatory obligations and enforcement measures, Defendants ignored, failed to comply with, or sought to evade them through subsequent conduct, corporate restructuring, and other actions alleged in this Complaint. The following background is provided solely to summarize the regulatory history and factual context preceding the events alleged herein and is not asserted as an independent basis for liability.

Prior to the period beginning in 2020, China Unicom Group maintained a multilayered ownership and operational structure that contributed to regulatory ambiguity within the United States. At the top of the structure, ownership and control remained firmly held by the People's Republic of China through the state-controlled parent entity, China Unicom Group. Beneath the PRC parent, the corporate chain proceeded through China Unicom (A-Share Company), intermediate offshore holding entities in the British Virgin Islands, and China Unicom (Hong Kong) Limited, which served as the publicly traded international arm of the enterprise. This upper-tier ownership structure remained stable and effectively locked throughout the relevant period; the 2011 cross-shareholding transaction with Telefónica S.A. did not modify this control structure, as Telefónica acquired only a minority interest without obtaining operational authority or governance rights. Below the Hong Kong entity, however, the operational footprint in the United States was fragmented across several affiliated entities—such as China Unicom USA Corporation (which held FCC international Section 214 authorizations), China Unicom America, China Unicom International, and China Unicom Global—that operated Points of Presence, routing centers, or wholesale carrier functions without clear corporate lineage in SEC disclosures. Between 2014 and 2015, China Unicom Group transferred its physical tower infrastructure assets into China Tower Corporation, further separating physical asset ownership from operational routing activities. Between 2016 and 2017, U.S. agencies identified discrepancies between the scale of wholesale routing activity conducted through these unlisted entities and the limited declared operations of the formally recognized subsidiary, prompting increased regulatory scrutiny.

*18 U.S.C. § 1595 CIVIL REMEDY - 7*

Pro Se Civil Complaint

In parallel with maintaining this locked upper-tier structure, Defendants intentionally engineered a multi-tiered corporate insulation mechanism designed to segregate legal liability from ultimate operational control across their U.S. and overseas network infrastructure. As reflected in annual disclosures on Form 20-F filed with the U.S. Securities and Exchange Commission (SEC) by China Unicom (Hong Kong) Limited, Defendants routed international operations through offshore British Virgin Islands (BVI) holding entities and unlisted operational subsidiaries—including China Unicom USA Corporation and China Unicom Global. Defendants systematically utilized this segmented listing methodology and shell structure to ensure that physical infrastructure staging, data center operations, and facility staffing were conducted through lower-tier, jurisdictionally isolated entities. By deliberate design, this structure allowed upper-tier parent entities and PRC state controllers to maintain ultimate operational authority over global routing assets while isolating labor sourcing, employment contracts, and facility management from U.S. judicial process, federal regulatory scrutiny, and statutory labor standards. As a result, when federal regulatory enforcement actions commenced, Defendants were structurally positioned to abandon, rebrand, or dissolve these front operating entities without interrupting underlying infrastructure management or exposing parent entities to direct liability for facility-level labor practice

Starting in early 2020, the United States "Team Telecom"—the ad hoc interagency arrangement of the Departments of Justice, Defense, and Homeland Security—determined that state-controlled foreign telecommunications carriers presented unacceptable risks of national security exploitation. Formalized by Executive Order 13913 on April 4, 2020, which established the Committee for the Assessment of Foreign Participation in the United States Telecommunications Services Sector, Executive Branch agencies unanimously recommended that the FCC revoke operating authorizations. These recommendations were grounded in documented cybersecurity vulnerabilities, inaccurate statements made to federal authorities regarding U.S. record storage, inaccurate public representations concerning cybersecurity practices, and operations providing opportunities for PRC state actors to engage in economic espionage and communications misrouting.

By mid-2020 and continuing into 2021, these regulatory findings resulted in formal license revocations and operational cancellations across multiple federal dockets, including GN Docket No. 20-110, ITC-214-20020728-00361, and ITC-214-20020724-00427 (China Unicom Americas), as well as WC Docket No. 18-89. Concurrently, pursuant to Executive Order 13959, the Department of the Treasury's Office of Foreign Assets Control (OFAC) placed China Unicom (Hong Kong) Limited and its associated trading security names on the Non-SDN Chinese Military-Industrial Complex (CMIC) List, including its securities trading in Singapore under ticker K3ID SG, in Hong Kong under 762 HK, and in the United States under

*18 U.S.C. § 1595 CIVIL REMEDY - 8*

Pro Se Civil Complaint

CHU US. These regulatory actions collectively stripped Defendants of their authority to operate within the United States telecommunications sector.

Following these formal license revocations and sanctions listings, Defendants executed a secondary evasion strategy to maintain operational control over their underlying physical network infrastructure while avoiding legal enforcement. Specifically, Defendants created, incorporated, and deployed a network of unlisted 'phantom' entities and fictitious local shell identities across multiple Asia-Pacific (APAC) jurisdictions, layered directly on top of their actual corporate structure. To give these phantom entities the appearance of legitimate, active commercial operations and satisfy local regulatory requirements, Defendants organized, maintained, and validated their operational capacity through batches of trafficked workers. Defendants knowingly recruited, transported across regional borders, harbored, and obtained these workers to perform physical network staging, infrastructure maintenance, and facility operations under forced labor conditions. Defendants subsequently submitted falsified operational profiles regarding these phantom entities to local APAC jurisdictions and federal oversight authorities—including responses provided regarding Points of Presence (POPs), data centers, and cloud facilities inquired about by the U.S. House Select Committee on the Strategic Competition Between the United States and the Chinese Communist Party. Plaintiff has identified and detailed these specific phantom entities and their reliance on forced labor pipelines in disclosures submitted to the U.S. Securities and Exchange Commission (SEC), demonstrating that Defendants knowingly operated this fraudulent structural layer to obscure their ongoing management of U.S.-connected infrastructure

By late 2024, Defendant China Unicom (Hong Kong) Limited was once again subpoenaed by the U.S. House Select Committee on the Chinese Communist Party (Chairman John Moolenaar, Ranking Member Raja Krishnamoorthi) for information seeking substantial records regarding its employees, operations, affiliates, data centers, Points of Presence, and cloud activities still operating in the United States. Similarly, Defendant Equinix, Inc. was subpoenaed by the U.S. Securities and Exchange Commission (SEC Subpoena, March 20, 2024) following a short-seller report published by Hindenburg Research (March 20, 2024), which was subsequently followed by a shareholder class action lawsuit (*In re Equinix, Inc. Securities Litigation*, Case No. 4:24-cv-01680 (N.D. Cal. 2024)). That litigation specifically alleged that (a) Equinix misclassified maintenance expenses as growth capital expenditures to artificially inflate its Adjusted Funds from Operations (AFFO); and (b) Equinix made false and misleading statements about its financial performance and the true state of its business operations. These continued oversight actions, along with related civil and regulatory proceedings, ultimately led Defendants to conspire to evade U.S. sanctions through a novel evasion scheme, where they invented several shell entities and related them

*18 U.S.C. § 1595 CIVIL REMEDY - 9*

Pro Se Civil Complaint

through various corporate relationships to dilute, hide, or disguise the identity of the sanctioned property. Specifically, Defendants China Telecom and China Unicom continued to own and operate their long-standing facility at 2 Tai Seng Avenue, Singapore—a Point of Presence, cloud, and infrastructure hub—by rebranding its four property blocks and showing various shell entities to operate these activities, none of which concealed their affiliation with the PRC while maintaining FCC cable landing authority throughout, utilizing forced labor to perform manual network staging connected to U.S.-landing infrastructure.

## FACTUAL ALLEGATIONS: FRAUDULENT RECRUITMENT, TRAFFICKING, AND FORCED LABOR

Between September 30, 2024, and January 19, 2025, Defendants Equinix Inc., China Unicom, and National Australia Bank (NAB) knowingly and intentionally orchestrated a deceptive recruitment, synthetic identity, and cross-border trafficking scheme in violation of 18 U.S.C. §§ 1590 and 1592. The Defendants initiated this scheme through fraudulent employment advertisements posted across professional job boards, utilizing fictitious recruitment agencies, sham front-office identities, and manufactured synthetic compliance profiles that falsely represented Plaintiff Sajjad Nasir was being recruited for legitimate, long-term technical employment stationed at Defendant Equinix's physical facility located at 639 Gardeners Road, Sydney, Australia (SY1). Having successfully induced Plaintiff into accepting employment and commencing physical labor at the SY1 facility under these false pretenses—with Defendant NAB utilizing specific branch channels (Branch Code 084-435) to execute off-grid financial transfers, back-dated banking entries, and non-SWIFT tracked transactions to disguise the true source and destination of funds—Defendants executed a premeditated cross-border transfer. As part of a continuous, unified scheme to evade U.S. national security prohibitions and FCC license revocations, Defendants knowingly transported, transferred, and harbored Plaintiff from Equinix's Sydney facility to an operational facility owned, operated, and controlled by China Unicom at 2 Tai Seng Avenue, Singapore (the Tai Seng Exchange). The explicit purpose of this fraudulent recruitment, document manipulation, and international transport was to validate Equinix's SY1 facility as an operational front office, establish unrecorded physical network nodes, and manufacture artificial corporate lineage to conceal China Unicom's data routing activities.

### FACTS – ALLEGED Coercive Control, Physical Isolation, Forced Labor, and Financial Abuse

Between January 21, 2025, and March 17, 2025, Defendants China Unicom, Equinix Inc., and NAB violated 18 U.S.C. §§ 1589 and 1592 by knowingly obtaining and maintaining Plaintiff's labor and services through a systematic scheme of physical coercion, contractual fraud, debt manipulation, and abuse of legal process. Upon Plaintiff's arrival at the Tai Seng Exchange in Singapore, Defendant China Unicom subjected

*18 U.S.C. § 1595 CIVIL REMEDY - 10*

Pro Se Civil Complaint

Plaintiff to extreme physical isolation and coercive transportation, forcing Plaintiff to lie face down on the covered floor of cargo vans during transit between facilities to conceal the physical location, routing hardware, and operational footprint of the enterprise under threat of immediate termination, deportation, and legal action. Under these coercive conditions, Plaintiff was compelled to perform grueling manual labor consisting of transporting, handling, rack-mounting, and staging heavy IT and telecommunications hardware directly connected to the PPC-1 subsea cable system. To enforce compliance, prevent Plaintiff from leaving, and maintain total operational control, Defendants engineered a fraudulent employment contract paired with false banking transactions administered through Defendant NAB, constructing an artificial employment debt and asserting that Plaintiff personally owed operational corporate expenses under threat of manufactured civil and criminal liabilities if he attempted to cease work. When Plaintiff suffered severe spinal trauma as a direct result of the compelled heavy manual labor, Defendants further abused legal and administrative processes by deliberately denying Plaintiff access to emergency medical evaluation and diagnostic care, systematically maintaining his physical isolation to perpetuate the forced labor scheme in violation of federal law.

**FACTS – ALLEGED, COERCION, AND ABUSE OF PROCESS**

Between September 30, 2024, and March 17, 2025, Defendants Equinix Inc., National Australia Bank (NAB), and China Unicom violated 18 U.S.C. § 1589 by knowingly obtaining and maintaining Plaintiff Sajjad Nasir's forced labor and services through a scheme employing employment contractual fraud, physical isolation, coercive transportation methods, false banking transactions, abuse of legal and administrative processes, and a pattern intended to cause Plaintiff to believe he would suffer serious harm. This deceptive recruitment scheme was initiated at Defendant Equinix Inc.'s physical commercial facility located at 639 Gardeners Road, Sydney, Australia ("SY1"), where Defendants manufactured false corporate organizational identities, synthetic compliance profiles, and fraudulent personnel credentials to trap Plaintiff in cross-border transit to Singapore. To effectuate this forced labor offense, Defendants engineered a fraudulent employment contract paired with false banking transactions administered through Defendant NAB (operating through Branch Code 084-435 / Branch ID 8173 and personal account number 734158173). Defendants manipulated these records and moved off-grid cash specifically to bypass the U.S. SWIFT tracking system, constructing an artificial employment debt that forced Plaintiff to personally bear corporate, operational, and travel expenses under explicit threats of manufactured legal and financial liabilities if he attempted to cease work. Under these coercive conditions, Plaintiff was compelled into forced labor consisting of transporting, handling, rack-mounting, and staging telecommunications and IT network hardware at 2 Tai Seng Avenue (TSX Securities Exchange / Tai Seng Exchange, Singapore). The

*18 U.S.C. § 1595 CIVIL REMEDY* - 11

Pro Se Civil Complaint

explicit corporate objective of compelling Plaintiff's forced labor was to build, operationalize, and conceal a network of front-office facilities for Defendant China Unicom—an entity prohibited from providing telecommunications services within the United States under FCC Order 22-9 and designated on the Non-SDN Chinese Military-Industrial Complex (CMIC) List under Executive Order 13959. Crucially, the forced labor compelled by Defendants was used to physically stage, rebrand, and transfer network hardware—primarily manufactured by vendors on the FCC Covered List—into newly invented shell entities to disguise sanctioned property, bypass regulatory revocations, and maintain uninterrupted data routing through subsea cable infrastructure directly connected to U.S. jurisdiction.

**FACTS – ALLEGED PHYSICAL RESTRAINT & HARM**

To enforce compliance, maintain physical isolation, and conceal the enterprise's operational footprint during the forced labor scheme, Defendant China Unicom repeatedly subjected Plaintiff to physical restraint, transporting Plaintiff face down on the covered floor of cargo vans during transit between facilities associated with China Unicom and Equinix in Singapore. As a direct result of the compelled forced labor involving heavy manual handling and rack-mounting of high-density IT and telecommunications hardware performed under these physically coercive and abusive conditions, Plaintiff sustained severe acute physical spinal trauma. Following this physical harm, Defendants further extended their systemic violations of 18 U.S.C. § 1589 by continuing to extract forced labor while abusing legal and administrative processes, deliberately denying Plaintiff access to emergency medical evaluation and diagnostic treatment to maintain his physical isolation, conceal the workplace injury, and perpetuate the forced labor cycle. Throughout this timeframe, Defendant Equinix Inc. actively facilitated this forced labor scheme and operational isolation by manipulating facility security passes and identity credentials across its owned SY1 facility in Sydney and the Tai Seng Exchange in Singapore, while Defendant NAB executed fabricated off-grid transactions to enforce the artificial debt bondage, mask the illicit financial flows sustaining the forced labor venture, and prevent Plaintiff from accessing funds to seek independent care or depart, despite Plaintiff having exhausted remedial procedures across both Australian and Singaporean jurisdictions.

**FACTS -ALLEGED UNLAWFUL INTERFERENCE, OBSTRUCTION, AND IDENTITY EXPLOITATION**

Between March 20, 2025, and June 6, 2025, Defendants National Australian Bank citing in active coordination to aid, abet, and protect Defendants China Unicom, Equinix Inc., and National Australia Bank (NAB)—violated 18 U.S.C. § 1589(b) by intentionally obstructing, attempting to obstruct, and interfering with the enforcement of federal forced labor prohibitions. Following a late-2024 subpoena issued to Defendant China Unicom by the U.S. House Select Committee on the Chinese Communist Party demanding

*18 U.S.C. § 1595 CIVIL REMEDY - 12*

Pro Se Civil Complaint

updated operational and infrastructure disclosures, Defendants exploited Plaintiff's government-issued identity documents and taxation filings to manufacture synthetic compliance profiles for China Unicom's illicit front offices. To further obstruct federal oversight and evade liability, Defendant National Australian Bank Insurance engineered a fraudulent workers' compensation insurance claim (Certificate #252790301), while coordinating with Defendant NAB to execute off-grid cash transfers and back-dated transactions bypassing the U.S. SWIFT tracking system. Operating under this fraudulent insurance claim, Defendants National Australian Bank Insurance, Dr. Diwan, and Synergy Radiology persistently solicited falsified medical reports and diagnostic test results, repeatedly delayed and canceled critical diagnostic appointments, and issued threats and harassment to undermine the documented origin of Plaintiff's forced labor injuries, conceal the enterprise's unlawful activities, and obstruct enforcement authorities.

### SEVERE PHYSICAL HARM, ACUTE SPINAL TRAUMA, AND PERMANENT DISABILITY

The forced labor scheme directly caused Plaintiff Sajjad Nasir to suffer severe, acute physical spinal trauma and permanent physical disability as a direct result of being compelled to perform heavy manual labor involving the handling, transporting, and rack-mounting of high-density IT and telecommunications hardware. This heavy manual labor was enforced under physically abusive conditions inside a repurposed facility at 2 Tai Seng Avenue (Tai Seng Exchange, Singapore) that was never structurally engineered or safely equipped to host heavy telecommunications infrastructure, but was instead improvised to hide blacklisted, sanctioned hardware for Defendant China Unicom. The physical harm was further exacerbated by Defendant China Unicom physically restraining Plaintiff during transit on the covered floor of cargo vans, and was subsequently compounded when Defendants National Australian Bank Insurance, Dr. Diwan, and Synergy Radiology deliberately blocked emergency medical evaluation, falsified diagnostic records, and denied required treatment, thereby knowingly perpetuating Plaintiff's physical suffering and permanent impairment to protect the forced labor venture.

*18 U.S.C. § 1595 CIVIL REMEDY* - 13

Pro Se Civil Complaint

## VII.    RELIEF

**FIRST CLAIM FOR RELIEF Trafficking with Respect to Forced Labor 18 U.S.C. 1590**
(*Against Defendants Equinix Inc., China Unicom*)

1. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

2. Defendants Equinix Inc., China Unicom, and National Australia Bank (NAB), individually and in conspiracy with one another, knowingly recruited, enticed, harbored, transported, provided, and obtained Plaintiff Sajjad Nasir for labor and services in violation of Chapter 77 of Title 18 of the United States Code, specifically 18 U.S.C. §§ 1589 and 1590.

3. **Fraudulent Recruitment and Enticement (18 U.S.C. § 1590):** Defendants initiated this unlawful scheme by knowingly and deceitfully enticing and recruiting Plaintiff in Sydney, Australia. Defendants utilized fraudulent job advertisements, fictitious recruitment agencies, sham front-office identities, and synthetic compliance profiles to falsely represent that Plaintiff was being hired for legitimate, long-term technical employment stationed at Defendant Equinix's physical facility located at 639 Gardeners Road, Sydney, Australia (SY1).

4. **Cross-Border Transportation (18 U.S.C. § 1590):** Having successfully induced Plaintiff into accepting employment and commencing labor under false pretenses, Defendants executed a premeditated cross-border transfer, knowingly transporting Plaintiff from Equinix's Sydney facility to an operational facility owned, operated, and controlled by Defendant China Unicom at 2 Tai Seng Avenue, Singapore (the Tai Seng Exchange). Defendants executed this international transport as part of a unified scheme to validate front-office operations, establish unrecorded network nodes, and subvert U.S. national security prohibitions and FCC license revocations.

5. **Harbouring, Obtaining, and Underlying Forced Labor (18 U.S.C. §§ 1589, 1590):** Upon Plaintiff's arrival in Singapore, Defendants knowingly harbored, contained, and obtained Plaintiff's labor and services under forced labor conditions in violation of 18 U.S.C. § 1589. Defendants compelled Plaintiff to perform heavy manual labor— consisting of transporting, handling, rack-mounting, and staging IT and

*18 U.S.C. § 1595 CIVIL REMEDY - 14*

Pro Se Civil Complaint

telecommunications hardware connected to the PPC-1 subsea cable system—through a combination of coercive methods:

6. **Physical Coercion and Restraint:** Subjecting Plaintiff to physical isolation and coercive transit conditions, forcing Plaintiff to lie face down on the covered floor of cargo vans during movement between facilities to conceal operational footprints;

7. **Abuse and Threatened Abuse of Legal Process:** Threatening Plaintiff with immediate employment termination, summary deportation, and manufactured civil and criminal liabilities if he attempted to cease work;

8. **Debt Bondage and Financial Manipulation:** Constructing an artificial employment debt through a fraudulent contract paired with off-grid financial transfers, back-dated banking entries, and non-SWIFT transactions executed through Defendant NAB (Branch Code 084-435) to assert that Plaintiff owed operational corporate expenses; and

9. **Infliction of Serious Harm and Medical Denial:** Intentionally denying Plaintiff access to emergency medical evaluation, diagnostic care, and treatment after Plaintiff suffered severe spinal trauma as a direct result of compelled manual labor, systematically maintaining his physical containment to perpetuate the scheme.

10. **Scienter:** Defendants committed each of the aforementioned acts knowingly, intentionally, and with premeditated knowledge that Plaintiff was recruited, transported, harbored, and obtained through fraud, coercion, physical restraint, and abuse of legal process for the purpose of forced labor.

11. **Conspiracy and Joint Liability (18 U.S.C. § 1594):** Defendants Equinix Inc., China Unicom, and NAB conspired, combined, and acted in concert to violate 18 U.S.C. §§ 1589 and 1590, rendering each Defendant jointly and severally liable for all underlying statutory violations pursuant to 18 U.S.C. § 1594.

12. **Extraterritorial Jurisdiction (18 U.S.C. § 1596):** Pursuant to 18 U.S.C. § 1596, this Court possesses statutory extraterritorial jurisdiction over Defendants' violations of 18 U.S.C. §§ 1589 and 1590, as Defendants maintain continuous commercial and operational presences within the United States, and the trafficking scheme was executed to subvert federal regulatory bans and manage physical infrastructure connected to U.S. telecommunications networks.

*18 U.S.C. § 1595 CIVIL REMEDY - 15*

Pro Se Civil Complaint

13. **Civil Cause of Action (18 U.S.C. § 1595):** Plaintiff is expressly authorized to bring this civil action and seek full financial recovery against Defendants pursuant to 18 U.S.C. § 1595.

14. **Proximate Cause and Damages:** As a direct and proximate result of Defendants' intentional, willful, and unlawful trafficking and forced labor practices, Plaintiff has sustained severe physical injuries, acute spinal trauma, permanent physical disability, prolonged emotional distress, mental anguish, loss of earning capacity, and substantial economic losses.

15. **Prayer for Relief:** Plaintiff is therefore entitled to recover compensatory damages, statutory damages, punitive damages, reasonable attorneys' fees, litigation costs, and such other legal and equitable relief as the Court deems just and proper pursuant to 18 U.S.C. § 1595.

*18 U.S.C. § 1595 CIVIL REMEDY - 16*

Pro Se Civil Complaint

**SECOND CLAIM FOR RELIEF (Forced Labor in Violation of 18 U.S.C. § 1589)**

*(Against Defendants Equinix Inc. and China Unicom)*

1. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

2. Defendants Equinix Inc. and China Unicom, individually, in concert, and in conspiracy with one another, knowingly obtained and maintained Plaintiff Sajjad Nasir's labor and services in violation of 18 U.S.C. § 1589 by means of physical restraint, schemes intended to cause fear of serious harm, abuse and threatened abuse of legal and administrative processes, and artificial debt bondage.

3. **Compelled Manual Labor and Physical Restraint (18 U.S.C. § 1589(a)(1)):** Defendants knowingly obtained Plaintiff's forced labor by subjecting Plaintiff to severe physical restraint and abusive transit conditions, forcing Plaintiff to lie face down on the covered floor of cargo vans during transit between facilities in Singapore. Under these physically restrictive conditions, Defendants compelled Plaintiff to perform grueling manual labor—specifically transporting, handling, rack-mounting, and staging high-density IT and telecommunications hardware at an improvised facility located at 2 Tai Seng Avenue (Tai Seng Exchange, Singapore), directly causing Plaintiff severe acute physical spinal trauma and permanent physical disability.

4. **Coercive Scheme, Plan, or Pattern (18 U.S.C. § 1589(a)(2)):** Defendants knowingly devised and executed a coordinated scheme and pattern of coercion starting at Defendant Equinix Inc.'s commercial facility located at 639 Gardeners Road, Sydney, Australia (SY1). Defendants manufactured false corporate identities, synthetic compliance profiles, and fraudulent personnel credentials to trap Plaintiff in cross-border transit to Singapore, establishing a controlled environment intended to cause Plaintiff to reasonably believe that failure to perform compelled labor would result in serious physical, financial, and reputational harm.

5. **Abuse and Threatened Abuse of Legal and Administrative Processes (18 U.S.C. § 1589(a)(3)):** Defendants knowingly maintained Plaintiff's labor through the systematic abuse of legal and administrative procedures. Defendants repeatedly threatened Plaintiff with immediate employment termination, summary deportation, and manufactured civil

*18 U.S.C. § 1595 CIVIL REMEDY - 17*

Pro Se Civil Complaint

and criminal liabilities if he attempted to cease work. Furthermore, following Plaintiff's acute spinal trauma, Defendants abused administrative processes by deliberately blocking emergency medical evaluation and diagnostic treatment, systematically maintaining Plaintiff's physical containment to conceal workplace injuries and perpetuate the forced labor cycle.

6. **Debt Bondage and Financial Coercion (18 U.S.C. § 1589(a)(4)):** Defendants engineered a fraudulent employment contract paired with manipulated banking records and off-grid financial transfers structured to bypass U.S. SWIFT tracking. Defendants utilized these false records to construct an artificial employment debt, forcing Plaintiff to personally bear corporate, operational, and international travel expenses under explicit threats of financial ruination and legal action if he attempted to depart.

7. **Venture Participation and Active Obstruction (18 U.S.C. § 1589(b)):** Defendants Equinix Inc. and China Unicom knowingly participated in, benefitted from, and received commercial value from a forced labor venture aimed at staging, rebranding, and routing blacklisted telecommunications hardware through subsea cable infrastructure connected to U.S. jurisdiction. Defendant Equinix Inc. actively facilitated this forced labor venture by manipulating facility security passes and identity credentials across its Sydney SY1 facility and the Tai Seng Exchange in Singapore. Furthermore, Defendants actively obstructed federal forced labor prohibitions and legislative oversight by exploiting Plaintiff's identity documents and tax filings to manufacture synthetic compliance profiles to subvert Congressional inquiry.

8. **Scienter:** Defendants committed each of the aforementioned acts knowingly, intentionally, and with premeditated knowledge, or in reckless disregard of the fact, that Plaintiff's labor and services were obtained and maintained through force, physical restraint, coercion, debt manipulation, and abuse of legal process.

9. **Conspiracy and Joint Liability (18 U.S.C. § 1594):** Defendants Equinix Inc. and China Unicom conspired, combined, and acted in concert to violate 18 U.S.C. § 1589, rendering each Defendant jointly and severally liable for all underlying statutory violations pursuant to 18 U.S.C. § 1594.

10. **Extraterritorial Jurisdiction (18 U.S.C. § 1596):** Pursuant to 18 U.S.C. § 1596, this Court possesses statutory extraterritorial jurisdiction over Defendants' violations of 18

*18 U.S.C. § 1595 CIVIL REMEDY* - 18

U.S.C. § 1589, as Defendants maintain continuous commercial and operational presences within the United States, and the forced labor venture was conducted to subvert federal regulatory revocations and manage subsea telecommunications infrastructure connected to the United States.

11. **Civil Cause of Action (18 U.S.C. § 1595):** Plaintiff is expressly authorized to bring this civil cause of action and seek full financial recovery against Defendants pursuant to 18 U.S.C. § 1595.

12. **Proximate Cause and Damages:** As a direct and proximate result of Defendants' intentional, willful, and unlawful forced labor practices, Plaintiff has sustained severe physical injuries, acute spinal trauma, permanent physical disability, prolonged emotional distress, mental anguish, loss of earning capacity, and substantial economic losses.

## 13. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sajjad Nasir respectfully requests that this Honorable Court enter judgment against Defendants Equinix Inc. and China Unicom, jointly and severally, and grant the following relief:

A. **Compensatory Damages:** Award Plaintiff compensatory damages in an amount to be proven at trial pursuant to 18 U.S.C. § 1595, including but not limited to damages for physical injuries, acute spinal trauma, permanent physical impairment, past and future medical expenses, physical pain and suffering, severe emotional distress, mental anguish, and loss of earning capacity;

B. **Restitution and Financial Disgorgement:** Award Plaintiff full restitution for the value of all labor and services exacted by Defendants under 18 U.S.C. § 1595, alongside the disgorgement and cancellation of all artificial debts, corporate expenses, and fraudulent financial obligations imposed on Plaintiff;

C. **Punitive and Exemplary Damages:** Award Plaintiff punitive and exemplary damages in an amount sufficient to punish Defendants for their willful, egregious, and intentional violations

*18 U.S.C. § 1595 CIVIL REMEDY - 19*

Pro Se Civil Complaint

of federal human trafficking and forced labor laws, and to deter such unlawful conduct in the future;

D. **Statutory Pre-Judgment and Post-Judgment Interest:** Award Plaintiff pre-judgment and post-judgment interest on all monetary awards as allowed by law;

E. **Attorneys' Fees and Costs:** Award Plaintiff reasonable attorneys' fees, expert witness fees, and all litigation costs incurred in bringing this action pursuant to 18 U.S.C. § 1595; and

F. **Other Just and Proper Relief:** Grant such other and further legal, equitable, or injunctive relief as this Court deems necessary, just, and proper.

*18 U.S.C. § 1595 CIVIL REMEDY - 20*

Pro Se Civil Complaint

**THIRD CLAIM FOR RELIEF -Obstructing and Interfering with the Enforcement of Trafficking Prohibitions 18 U.S.C. § 1590(b) and 18 U.S.C. § 1595**

*(Against Defendant National Australia Bank)*

1. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

2. Pursuant to 18 U.S.C. § 1590(b), whoever knowingly obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of 18 U.S.C. § 1590 shall be subject to the full statutory penalties and civil liabilities provided under federal law.

3. **Off-Grid Financial Structuring and SWIFT Tracking Evasion (18 U.S.C. § 1590(b)):** Defendant National Australia Bank (NAB) knowingly, intentionally, and willfully interfered with and obstructed the enforcement of federal human trafficking laws by executing, manipulating, and masking illicit financial flows that sustained the trafficking scheme. Operating through specific branch channels (Branch Code 084-435 / Branch ID 8173 and personal account number 734158173), Defendant NAB deliberately engineered back-dated banking entries, off-grid cash transfers, and non-SWIFT tracked transactions specifically designed to bypass U.S. banking scrutiny and evade SWIFT data tracking mechanisms.

4. **Interference with Federal Enforcement and Regulatory Oversight (18 U.S.C. § 1590(b)):** Defendant NAB actively interfered with and prevented regulatory and statutory enforcement against principal Defendants Equinix Inc. and China Unicom. By fabricating financial transactions and manipulating Plaintiff's financial information and account data, Defendant NAB obscured the illicit enterprise's financial footprint. This financial concealment directly frustrated and hindered federal oversight authorities—including enforcement under FCC Order 22-9, OFAC Non-SDN Chinese Military-Industrial Complex List sanctions under Executive Order 13959, and legislative subpoenas issued by the U.S. House Select Committee on the Chinese Communist Party.

5. **Financial Coercion and Debt Enforcement in Aid of Obstruction:** Defendant NAB further obstructed anti-trafficking enforcement by constructing and enforcing artificial employment debts against Plaintiff Sajjad Nasir. NAB executed false banking transactions that saddled Plaintiff with operational, corporate, and travel expenses, creating a coercive financial obligation under threat of manufactured legal liability. This financial manipulation deprived Plaintiff of the economic resources required to depart, seek independent medical evaluation, or report the ongoing trafficking violations to law enforcement authorities.

6. **Scienter:** Defendant NAB committed each of the aforementioned acts knowingly, intentionally, and with willful disregard of federal trafficking prohibitions, possessing actual knowledge or acting

*18 U.S.C. § 1595 CIVIL REMEDY - 21*

Pro Se Civil Complaint

in reckless disregard of the fact that its financial manipulations obstructed enforcement and directly aided an active human trafficking venture.

7. **Extraterritorial and Supplemental Jurisdiction (18 U.S.C. § 1596 & 28 U.S.C. § 1367):** Subject to Rule 18 and Rule 20, this Court possesses subject matter and supplemental jurisdiction over Defendant NAB pursuant to 28 U.S.C. § 1367 and 18 U.S.C. § 1595, as the claims against NAB arise from the same common nucleus of operative facts as those asserted against principal Defendants Equinix Inc. and China Unicom. Furthermore, extraterritorial jurisdiction exists pursuant to 18 U.S.C. § 1596, as Defendant NAB maintains continuous commercial presences within the United States, including SEC registration and securities trading, and executed off-grid financial manipulations specifically to evade U.S. regulatory oversight and SWIFT tracking systems.

8. **Civil Cause of Action (18 U.S.C. § 1595):** Plaintiff is expressly authorized to bring a civil action against Defendant NAB under 18 U.S.C. § 1595(a) to recover full financial damages caused by NAB's violations of 18 U.S.C. § 1590(b).

9. **Proximate Cause and Damages:** As a direct and proximate result of Defendant NAB's intentional obstruction, interference, and financial manipulation under 18 U.S.C. § 1590(b), Plaintiff's physical containment and forced labor conditions were prolonged, directly contributing to severe physical injuries, acute spinal trauma, permanent physical disability, financial ruination, severe emotional distress, and substantial economic losses.

10. **PRAYER FOR RELIEF (AGAINST DEFENDANT NATIONAL AUSTRALIA BANK)**

**WHEREFORE**, Plaintiff Sajjad Nasir respectfully requests that this Honorable Court enter judgment against Defendant National Australia Bank (NAB) under 18 U.S.C. § 1590(b) and 18 U.S.C. § 1595, and grant the following relief:

A. **Compensatory Damages:** Award Plaintiff compensatory damages against Defendant NAB, jointly and severally with co-Defendants where applicable, in an amount to be proven at trial pursuant to 18 U.S.C. § 1595, for physical, financial, and emotional injuries proximately caused by NAB's unlawful obstruction and interference;

B. **Disgorgement and Debt Cancellation:** Order Defendant NAB to disgorge all financial proceeds, transaction fees, and commercial benefits derived from its off-grid transactions supporting the enterprise, and enter an order declaring all artificial debts, corporate expenses, and financial obligations asserted against Plaintiff to be null, void, and unenforceable;

C. **Punitive and Exemplary Damages:** Award Plaintiff punitive and exemplary damages against Defendant NAB in an amount sufficient to punish its willful evasion of U.S. banking scrutiny and

*18 U.S.C. § 1595 CIVIL REMEDY - 22*

Pro Se Civil Complaint

deliberate obstruction of anti-trafficking enforcement, and to deter future institutional banking interference;

D. **Statutory Pre-Judgment and Post-Judgment Interest:** Award Plaintiff pre-judgment and post-judgment interest on all monetary awards as permitted by law;

E. **Attorneys' Fees and Costs:** Award Plaintiff reasonable attorneys' fees, expert witness costs, and all litigation expenses incurred pursuant to 18 U.S.C. § 1595(a); and

F. **Other Just and Proper Relief:** Grant such other and further legal, equitable, or declaratory relief as this Court deems necessary, just, and proper.

## VIII.   CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.  I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: ▢       07/24/2026

Signature of Plaintiff

Printed Name of Plaintiff        Sajjad Nasir

*18 U.S.C. § 1595 CIVIL REMEDY - 23*

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

AUG 3 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SAJJAD NASIR I,

Plaintiff - Appellant,

v.

CHINA UNITED NETWORK
COMMUNICATIONS GROUP CO., LTD.,
named as China Unicom, Industrial
Complex, NON-SDN Chinese Military; et
al.,

Defendants - Appellees.

No. 26-4162

D.C. No.
2:26-cv-01853-LK
Western District of Washington,
Seattle

ORDER

The motions (Docket Entry Nos. 33, 35) to withdraw earlier filings are

granted. The motions at Docket Entry Nos. 30, 31, and 32 are withdrawn.

All other pending motions are referred to the panel assigned to decide the

merits of this appeal.

The opening brief remains due October 9, 2026. There is no appearance by

appellees, so briefing will be complete when the opening brief is filed.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT